U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 OCT 24  PM 1: 56

CLERK
BY_____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

| | |
|---|---|
| ALAIN PASCAL BERNARD GALLEY SCHULER AND JEAN CHRISTIAN PHILIPPE GALLEY SCHULER,      Plaintiffs, <br><br> v. <br><br> RAINFOREST ALLIANCE, INC.; FOREST STEWARDSHIP COUNCIL – US; and U.S. WORKING GROUP, INC.,      Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )  CIVIL ACTION 2:14-cv-226 |

## PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Alain Pascal Bernard Galley Schuler and Jean Christian Philippe Galley Schuler ("Plaintiffs" or "the Galleys") file this Complaint against Defendants Rainforest Alliance, Inc. ("Rainforest"); Forest Stewardship Council – US ("FSC"); and U.S. Working Group, Inc. ("USWG") (collectively "Defendants") for injunctive relief, damages, and declaratory relief.

## I. PARTIES

1.      Plaintiff Alain Pascal Bernard Galley Schuler is a foreign national.  In addition to his own claims against Defendants, on October 20, 2014, Plaintiff Alain Pascal Bernard Galley Schuler received a valid assignment of claims from his sister Anne Joelle Viguier-Galley, which granted him the right, title, and interest to all of her claims and causes of action against Defendants.  The Galley siblings own contiguous parcels of land, which were, together with a parcel owned by Plaintiff Jean Christian Philippe Galley Schuler, the subject of a sustainability and certification analysis performed by the Defendants.

2.      Plaintiff Jean Christian Philippe Galley Schuler is a foreign national.

3.      Defendant Rainforest is a nonprofit corporation with its Forestry Headquarters staff and office located at 65 Millet Street, Suite 201, Richmond, Vermont  05477.  Rainforest is registered with the Vermont Secretary of State under business identification number 0091822. Rainforest can be served through its registered agent, CT Corporation System, at 400 Cornerstone Drive #240, Williston, Vermont  05495.

4.      Defendant FSC is the trade name for a nonprofit organization that does business in Vermont.  FSC is registered with the Vermont Secretary of State under business identification number 0285147.  FSC can be served through its registered agent Kathleen Boe, 64 Court Street, Middlebury, Vermont 05753.

5.      Defendant USWG owns the FSC trade name and does business as FSC.  USWG is a Vermont nonprofit corporation and is registered with the Vermont Secretary of State under business identification number 0054703.  USWG can be served through its registered agent Kathleen M. Boe, 64 Court Street, Middlebury, Vermont  05753.

## II.  JURISDICTION AND VENUE

6.      At all times relevant to this Complaint, Plaintiffs were foreign citizens who did not have any form of United States residency.

7.      At all times relevant to this Complaint, Defendants transacted business within the State of Vermont.

8.      The defamatory statements alleged herein were published in Vermont by Defendants.

9.      The negligent actions alleged herein were conducted by Defendants transacting business in Vermont.

10.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because all parties are diverse in citizenship, and the amount in controversy is in excess of $75,000.00.

11.     Venue is proper as Defendants transacted business in Vermont.

### III.  <u>FACTUAL BACKGROUND</u>

12.     Since 1992, the Galleys have owned contiguous parcels of land in Campeche, Mexico consisting of approximately 3,268.41 hectares (approximately 8,076 acres) (the "Galley Property").  The Galleys purchased this land for commercial reasons and to gain economic benefit from the land.  The deeds for the Galley Property are properly filed in the Public Registry of Property and Commerce in Campeche, Mexico.

13.     On or around April 13, 2003, Agropecuaria Santa Genoveva, S.A.P.I. de C.V. ("AGSA"), who is a neighbor of the Galley Property, entered the Galley Property unannounced, without permission, and took possession and control of over 1,547.11 hectares of land (approximately 3,823 acres) from the Galley Property (the "Invaded Property").

14.     On April 16, 2003, the Galleys filed a lawsuit in Mexico against AGSA to recover possession of the Invaded Property (the "Trespass Action").

15.     Defendants are in the business of providing landowners with independent certification services for forestry operations.  The certification standards applied are purportedly based upon "globally respected sustainability standards" and are claimed "to generate ecological, social and economic benefits" by ensuring the wood supply comes from legal sources using environmentally and socially responsible practices.  Rainforest is the leading certifier for FSC Forest Management and one of FSC's founders.  Rainforest has certified companies including small businesses in Vermont such as Vermont WoodNet and Copeland Furniture as well as

global corporations like Home Depot and Ikea. While FSC does not issue certifications itself, it sets the standards that certification bodies, such as Rainforest, use in the certification process.

16.     In 2006, AGSA initiated the process for obtaining an FSC Forest Management Certification from Rainforest. On or about November 6, 2006, Mr. Alain Pascal Bernard Galley Schuler notified Rainforest that he was opposed to such a certification because AGSA requested the certification include the Invaded Property, owned by the Galleys, and because AGSA's forestry operations did not comply with FSC Principles and Criteria.

17.     AGSA was the first and largest forestry project of its kind in Mexico. AGSA has assured investors that the FSC certification is a valuable and important part of its business strategy, and AGSA prominently displays its FSC certification on its company website.

18.     On or about August 28, 2009, Rainforest first issued an FSC Forest Management Certificate to AGSA for the property in Campeche, Mexico. This Certificate, which did not include the Invaded Property, stated that it was valid for five years with annual audits. Although the Invaded Property was initially excluded from the certification, it was later added into the scope of the FSC Forest Management Certificate in 2012, as is discussed in detail below. The Vermont office of Rainforest was involved in AGSA's certification process and is specifically identified on the front page of the initial evaluation and each of the annual audits.

19.     Despite a January 15, 2010 Mexico Court order in the Trespass Action holding that the Galleys proved that they were the owners of the property stated in their deeds, AGSA continued to attempt to obtain FSC certification for the Invaded Property. AGSA submitted to Rainforest a 2011 Mexico Court Order titled "Amparo directo 48/2011 en materia civil" regarding the Invaded Property. AGSA wrongfully claimed that the Order proved that it owned the Invaded Property.

20.    The Mexico court did not hold in its January 15, 2010 Order that AGSA owned the Invaded Property, but rather that the Galleys had not met their burden to prove all of the elements of the Trespass Action.

21.    Nevertheless, in the 2012 Audit Report, Rainforest extended the scope of the AGSA Certification to include the Invaded Property. In Section 2.2 of the 2012 Audit Report, Rainforest stated that AGSA demonstrated its ownership of the 1547.11 hectares of the Invaded Property that was in dispute with the Galleys and that it was therefore the legal owner of the property. In Section 2.5 of the 2012 Audit Report, Rainforest inaccurately identified the resolution of the Trespass Action in stating that AGSA demonstrated ownership of the Invaded Property.

22.    The 2012 Audit Report also reported that AGSA had demonstrated ownership by maintaining and cleaning the roads within the Invaded Property. However, no Mexico court ruling made any determination that AGSA had proper possession or undisputed legal ownership of the Invaded Property. Instead, the Mexico court expressly held that Plaintiffs were the owners of the properties stated in their deeds. The Galleys learned of the wrongful certification of the Invaded Property after the Invaded Property was certified and no reasonable opportunity was provided to object to or counter the erroneous statements that were made in the 2012 Audit Report.

23.    Rainforest issued an initial report on or about August 28, 2009, and it issued subsequent audits in 2010, 2011, 2012, and 2013 for AGSA's FSC Forest Management Certification to AGSA and FSC. FSC uploaded and published these documents in its Certificate Database, which is accessible on the internet in the United States and globally. The FSC Certificate Database can be accessed through FSC's website.

24.     Rainforest's 2012 Audit Report for AGSA was completed on December 5, 2012, and was electronically uploaded to the FSC database on or about December 6, 2012. Rainforest's 2012 Audit Report for AGSA is available on the FSC website.

25.     Rainforest issued the FSC Forest Management Certification to AGSA despite the fact that AGSA's forestry operations did not comply with FSC Principles and Criteria.   In particular, the Invaded Property certified by Defendants as AGSA's is not owned by AGSA. The FSC Forest Management Certification is also improper because AGSA was specifically and irrevocably denied the permits required for its operations and because AGSA destroyed archeological sites and engaged in the clear cutting of indigenous rainforests, contrary to FSC principles.

26.     Likewise, AGSA's Chain-of-Custody Certificate was improperly issued.  AGSA is not a properly certified forestry management operation, and there is not an "unbroken chain of certified organizations covering every change in legal ownership."  In addition, the Chain-of-Custody Certificate should not have been issued because AGSA's forest is not properly managed, and AGSA does not legally own any timber harvested from the Invaded Property.

27.     Rainforest's inaccurate, negligent, and/or defamatory issuance of certifications gave AGSA a basis to display the corresponding FSC and Rainforest marks on its products and promotional materials, including timber and other resources stolen from the Invaded Property. AGSA also touts its FSC Certifications on its website.   As a result, when conscientious consumers and wood product distributors see the FSC logo coupled with the "Rainforest Alliance Certified™" seal on AGSA products and packaging, they are led to believe that those products come from a forest that has met rigorous standards for protecting forestlands, communities, and wildlife as well as surety regarding ownership of the lands.  Not only do these

logos and seals provide assurance that the land and resources are owned by AGSA, but they also provide consumers with a guarantee that the products come from responsible sources.  Further, FSC has a platform called FSC Marketplace that connects buyers and suppliers of FSC certified products and materials.   These identifiable benefits of certification are substantial and, in AGSA's case, should not have been bestowed.

28.    Defendants' certification of the Invaded Property has interfered, and continues to interfere, with the Galleys' business and economic interests related to the Galley Property.

29.    Defendants made false and defamatory statements regarding Plaintiffs' ownership of properties, failed to adhere to their own standards in issuing certifications to AGSA, ignored AGSA's irresponsible environmental and social practices, failed to exercise the requisite care in ascertaining the accuracy of the information utilized in making the representations contained therein, and wrongfully issued certifications to AGSA covering timber illicitly removed from the Invaded Property.

30.    Defendants, who claim to adhere to suitable processes and safeguards in their decision-making in order to issue impartial and independent forestry certifications, owed legal duties to the Galleys, which they breached despite having express and/or implied knowledge of the Galleys' title to the Invaded Property and the other legal issues surrounding the properties in question.

31.    The Galleys have suffered actual harm and damages as a result of Defendants' actions and have incurred significant expenses in counteracting Defendants' inaccurate, false, and misleading publications.  The Galleys seek redress for those injuries, including punitive damages, and they seek a declaration protecting their rights in their properties and invalidating

all of the improper certifications issued.  AGSA's FSC/Rainforest Alliance certifications should be withdrawn in their entirety.

## IV.  CAUSES OF ACTION

### A.      ACTS OF AGENTS AND VICARIOUS LIABILITY

32.      Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 31 above as if fully set forth herein.

33.      When it is alleged in this petition that Defendants did any act, it is meant that Defendants performed or participated in the act or that Defendants' officers, directors, employees, or agents performed or participated in the act on behalf of and under the authority of Defendants.

34.      Plaintiffs assert that Defendants are liable for the acts of other offenders under Defendants' direction, control, or supervision under at least the following principles of law and equity:  principal/agent, implied agency, apparent agency, express agency, employer/employee, joint venture, single business enterprise, borrowed-servant, and/or fraud.

### B.      DECLARATORY JUDGMENT

35.      Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 34 as if fully set forth herein.

36.      Federal Rule of Civil Procedure 57 and Chapter 167 of the Vermont Declaratory Judgment Act provide the Court with authority "to declare rights, status, and other legal relations whether or not further relief is or could be claimed."  12 V.S.A. § 4711.

37.     Defendants have published statements and issued certifications that misstate and violate Plaintiffs' legal rights.  A real and substantial controversy thus exists between the parties, and the Court's declarations will serve a useful purpose.

38.     Plaintiffs request that the Court issue declarations that (1) the opinion in the Mexico court in the Trespass Action does not establish that AGSA owns title to the properties in question or the timber thereon; (2) that the FSC certifications awarded to AGSA on the Invaded Property are invalid and should be publicly revoked; (3) that Defendants failed to follow their own certification guidelines in issuing the certifications of the entire geographic area to AGSA; (4) that the certification awarded to AGSA on its other lands is invalid and should be publicly revoked; (5) that the Galleys own title to the Invaded Property in question and the timber thereon; and (6) that the Galleys are entitled to seek certification for any timber located on the Invaded Property.

## C.     NEGLIGENCE

39.     Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 38 as if fully set forth herein.

40.     Defendants owed legal duties to Plaintiffs not to make false statements about lands Plaintiffs hold in title, to use reasonable care in making representations and ascertaining the accuracy of any information utilized in making those statements about the Galley Property, to exercise the requisite level of care in determining the ownership of lands, when otherwise following their guidelines, and in issuing certifications that affect the Galley Property.

41.     Defendants breached their duties by negligently failing to use requisite care in making the representations at issue and in failing to ascertain the accuracy of information given to others, by failing to competently and accurately cite to the Mexico court's holding in the

Trespass Action, by failing to follow their own guidelines governing their certifications, and by wrongfully issuing the certifications.

42.     Moreover, Defendants specialize in issuing these certifications and should be held to the requisite high standard of care of professionals in their field consistent with their education, training, and expertise.

43.     The Galleys suffered actual injuries proximately caused by Defendants' negligence, including financial injury, injury to lands, injury to personal and professional reputation, embarrassment, diminished property value, and loss of business.

44.     Defendants' actions were carried out under circumstances evidencing insult and oppression and a reckless or wanton disregard of the Galleys' rights.

45.     Defendants knew or should have known of the falsity of the statements, representations, and/or certifications made.  Additionally, Defendants acted with actual and/or constructive knowledge of the falsity of the statements made.

**D.     DEFAMATION**

46.     Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 45 as if fully set forth herein.

47.     Defendants made false and defamatory statements to third parties about the Galleys and their property.

48.     Those statements were made negligently and/or with knowledge of their falsity.

49.     Rainforest published the false statements in its reports and audits to, at a minimum, FSC and AGSA.  FSC then published the false statements online in its Certificate Database.  Rainforest knew that FSC would publish the reports and audits in question in its

Certificate Database, which thereby created an unreasonable risk that the defamatory statements would be communicated to other parties.

50.     The false statements were made without privilege.

51.     Defendants' false statements exposed the Galleys to ridicule and impeached their honesty, integrity, virtue, and reputation.

52.     Defendants' false statements placed the lands owned by the Galleys at risk of trespass and other damage to their lands.

53.     As a result, the Galleys have suffered actual injuries proximately caused by Defendants' defamatory statements, including financial injury, injury to personal and professional reputation, injury to lands, embarrassment, diminished property value, and loss of business.  Additionally, the Galleys incurred significant expenses in counteracting the inaccurate, false, and misleading publications.

54.     Defendants made the false statements under circumstances evidencing insult and oppression and a reckless or wanton disregard of the Galleys' rights.  Additionally, Defendants acted with actual and/or constructive knowledge of the falsity of the statements made.

E.     **SLANDER OF TITLE**

55.     Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 54 as if fully set forth herein.

56.     Defendants published false statements about the Galleys' title to the Invaded Property.

57.     Defendants' false statements had a practical effect upon the Galleys' ability to use their land and/or to conduct business concerning the Galley Property and timber on their land.

58.     The Galleys suffered actual injuries proximately caused by Defendants'
defamatory statements, including financial injury, injury to lands, diminished property value, and
loss of business.  Additionally, the Galleys incurred significant expenses in counteracting the
libelous publications.

59.     Defendants maliciously made the false statements under circumstances
evidencing personal ill will, insult, and oppression with a reckless or wanton disregard of the
Galleys' rights.  Further, Defendants acted with actual knowledge of the falsity of the statements
made.

WHEREFORE, Plaintiffs request that Defendants be cited according to law to appear and
answer herein, and that upon notice and a final hearing on the merits, the requested declarations
be issued.  In addition, Plaintiffs respectfully pray that the Court order Defendants to pay all
damages sought, including actual damages, compensatory damages, lost profits resulting from
the false statements and improper certifications, restitution, disgorgement of Defendants' profits
from their wrongful conduct, punitive damages, costs of Court, costs of investigation, pre-
judgment and post-judgment interest, and reasonable attorneys' fees to which Plaintiffs may
show themselves to be justly entitled.  Plaintiffs further pray that the Court grant them all other
relief at law or in equity to which Plaintiffs may show themselves entitled.

## VI.  **JURY DEMAND**

60.     Plaintiffs hereby demand a trial by jury.

Dated at the City of Rutland, County of Rutland, and the State of Vermont this 24th day
of October, 2014.

Respectfully submitted,

By: _____

Ann L. Al-Bahish
Jackson Gilmour & Dobbs, P.C.
(Admission Pro Hac Vice pending)

Jackson Gilmour & Dobbs, PC
3900 Essex, Suite 700
Houston, Texas 77027
(713) 355-5000
(713) 355-5001 (Fax)
email:  aal-bahish@jgdpc.com

_____

Thomas P. Aicher, Esq.
Cleary Shahi & Aicher, P.C.
110 Merchants Row, 3rd Floor
Post Office Box 6740
Rutland, VT 05702-6740
(802) 775-8800
(802) 775-8809 (Fax)
email: tpa@clearyshahi.com